IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK12-42639 |
| | ) | |
| CRAIG L. WHITE and | ) | CH. 7 |
| VONNIE D. WHITE, | ) | |
| | ) | |
| Debtors. | ) | |

# ORDER

Hearing was held in Lincoln, Nebraska, on January 8, 2014, on a motion to approve compromise under Rule 9019 filed by the Chapter 7 trustee, John A. Wolf (Fil. #54); resistances filed by Debtors (Fil. #55), by creditor Caterpillar Financial Services Corporation (Fil. #56 and #62), and by interested party CNC Investment Properties, LLC (Fil. #65). Hearing was also held on a motion for appointment pursuant to 11 U.S.C. § 503(b) and related law filed by creditor People's United Equipment Finance Corp. (Fil. #57), with a resistance filed by creditor Caterpillar Financial Services Corporation (Fil. #63). Galen E. Stehlik appeared for Debtors; John A. Wolf appeared as the Chapter 7 trustee; Richard P. Garden, Jr. appeared for Caterpillar Financial Services Corporation ("CAT"); Thomas O. Ashby appeared for People's United Equipment Finance Corp. ("People's"); Gregory M. Neuhaus appeared for CNC Investment Properties, LLC ("CNC"); and Michael J. Whaley appeared for Webster Capital ("Webster"). Evidence was received, and the matter was taken under advisement.

Although the motions at issue seem straightforward, looks can be deceiving. In addition to the issues raised overtly by the motions, they also necessarily involve issues regarding the existence and priority of judgment liens, the validity of a revocation of an inheritance by a debtor, piercing a corporate veil, "unclean hands," and the rights and duties of a trustee. For the reasons stated below, the motions are denied.

*Background*[1]

Debtors are involved in farming, auto sales, and various other businesses. After suffering business setbacks and being involved in collection litigation, Debtors filed for relief under Chapter 7 of the Bankruptcy Code on December 11, 2012. At the time of bankruptcy filing, they were indebted to CAT in the approximate amount of $835,000.00 by virtue of a judgment entered on April 9, 2012. They were also involved in litigation with People's, f/n/a Financial Federal Credit, Inc., which entity apparently obtained an "Agreed Judgment" in the United States District Court in Texas on September 14, 2011, and a "Final Judgment" from that court on January 9, 2012. The Agreed Judgment was registered in Hall County, Nebraska, on November 18, 2011, and the Final Judgment was registered in Hall County on May 23, 2012. The proof of claim filed by People's asserts a balance

---

[1]Many additional background facts are set forth in this court's Order entered on this same date in *Caterpillar Fin'l Servs. Corp. v. White*, Adv. Proceeding No. 13-4010.

due in excess of $1,125,000.00. The total amount of all proofs of claim filed in the case exceeds $2,900,000.00.

Craig White and his father, Gerald R. White, each owned an undivided one-half interest in farm property located in Hall County, Nebraska, which is sometimes described as 2565 West Platte River Road, Doniphan, Nebraska. Gerald White died on September 12, 2011. His will provided for Craig White to receive his father's one-half interest in the farm. On June 7, 2012, Craig White signed a renunciation of his interest in the probate estate and filed it with the probate court in Hall County, Nebraska. The renunciation was later recorded in the Hall County Register of Deeds on August 13, 2012. Due to Craig White's renunciation, the personal representative of the estate of Gerald R. White distributed Craig White's share of the probate estate, including the farm, to Craig White's children, Cody and Casondra. Cody and Casondra formed CNC Investment Properties, L.L.C. ("CNC"), and transferred their undivided one-half interest in the farm to that entity. Thus, at this time, the public record shows the farm to be owned one-half by Craig White and one-half by CNC.

Meanwhile, Debtors are also the owners of C&V, LLC ("C&V"), a Nebraska limited liability company, located in Doniphan, Nebraska, which entity owns commercial real estate described as 201 North 1st Street, Doniphan, Nebraska, which is referred to as the Cravon Auto site. People's, CAT, and perhaps other creditors appear to believe that they can pierce the corporate veil of C&V and thereby allow judgments against Debtors to become judgment liens on real estate owned by C&V. People's, CAT, perhaps other creditors, and the trustee also believe that Craig White's renunciation of an undivided one-half interest in the probate estate of Gerald White was invalid and unenforceable as against the creditors of Craig White.

Since the date of bankruptcy filing, three adversary proceedings have been commenced. In Case No. A13-4010, CAT has filed an adversary proceeding to deny Debtors' discharge pursuant to 11 U.S.C. § 727(c), (d), and (e). In Case No. A13-8016, People's has also commenced an adversary proceeding asserting that its debt should not be subject to discharge under 11 U.S.C. § 523(a)(2) and (4), and that Debtors should be denied a discharge pursuant to 11 U.S.C. § 727(c), (d), and (e). In Case No. A12-4106, Debtors were also involved in another adversary proceeding with Webster Capital Finance, Inc., which case commenced in the United States District Court, was transferred to bankruptcy court upon bankruptcy filing, and has been transferred back to the United States District Court for further proceedings.

Thus, upon bankruptcy filing, the trustee found himself with a bankruptcy estate consisting of the following:

1. An undivided one-half interest in the farm property. Debtors scheduled the value of the undivided one-half interest to be $384,250.70. Interestingly, the other one-half interest in the farm was valued at $510,637.00 in Gerald White's probate proceeding. On the other hand, People's and the trustee argue that the farm as a whole could sell for approximately $1,631,000.00. Bank of Doniphan apparently has an undisputed lien on the farm in the amount of $363,569.00. Using the higher value for the farm as a whole, after subtracting the Bank of Doniphan's lien and estimated

sales-related costs of 10%, the net value of the farm as a whole appears to be no greater than $1,250,000.00.

      2.      The bankruptcy estate has a potential claim to an undivided one-half interest in the farm property by virtue of the Gerald White probate estate if the Craig White renunciation of the probate interest can be invalidated. People's, CAT, and the trustee all seem to believe that Craig White's renunciation can be invalidated. Of course, Craig White and CNC believe the renunciation was valid. While both CAT and People's have commenced proceedings to deny Craig White a discharge due to the renunciation, it does not appear that anyone has commenced an action to invalidate or set aside the transfer of the property.

      3.      The membership interest in C&V, which entity owns the Cravon Auto site, is apparently worth approximately $290,000.00 and is unencumbered. After estimated selling costs of 10%, the Cravon Auto site would apparently have a net value of $261,000.00.

People's asserts a judgment lien of at least $1,125,000.00. CAT asserts a judgment lien of at least $835,000.00. Combined, the amount due on the two judgment liens is almost $2,000,000.00. Thus, assuming both judgment liens are valid (and their validity does not appear to be at issue), there is no equity in the farm property for the benefit of the bankruptcy estate. Compounding the problems for the trustee is the fact that the estate has relatively little cash, though it does own C&V, which owns a valuable parcel of real estate.

*Pending Motions*

While trying to sort out the bankruptcy estate, the trustee had been in contact with various creditors, including People's. As a result, the trustee struck a deal with People's and filed a motion to approve compromise under the terms of which:

      1.      The People's proof of claim would be allowed;

      2.      The trustee would sell the entire farm free and clear of liens, with 80% of the net sale proceeds being paid to People's and 20% to the bankruptcy estate. The net sale proceeds are those proceeds remaining after the payment of any closing costs and any amounts required to be paid to CNC or Craig White's children for their asserted one-half interest in the farm;

      3.      Counsel for People's would represent the trustee in pursuing the sale and litigating with CNC/Craig White's children regarding the net sale proceeds, and its reasonable legal fees and expenses would be allowed as an administrative claim against the sale proceeds; and

      4.      The trustee would also sell the Cravon Auto site, and the net proceeds would be paid 20% to People's and 80% to the bankruptcy estate.

In addition to the motion to approve compromise, People's also filed a motion for appointment pursuant to 11 U.S.C. § 503(b), under the terms of which counsel for People's seeks to be employed by the trustee for purposes of representing the trustee in connection with the sales and litigation referenced in the motion to approve compromise. Both motions have drawn objections.

CAT, as a pre-petition judgment lien creditor, objects to the motions because it is not a party to the motion to approve compromise even though it is a judgment lienholder against the subject property. CAT asserts that its judgment lien is prior in time to the judgment lien of People's against all real estate of Debtors. Specifically, even though People's obtained and filed for record in Hall County an "Agreed Judgment" prior to the date of the CAT judgment, CAT believes that the Agreed Judgment of People's was interlocutory and cannot constitute a lien on the real estate. CAT further points out that the "Final Judgment" entered in favor of People's was registered in Hall County after the date that CAT's judgment was entered. Thus, at a minimum, there is a dispute as to the priority between the liens claimed by People's and CAT. CAT also does not believe that counsel for People's should be retained to represent the bankruptcy estate and be paid from the bankruptcy estate ahead of CAT.

Debtors and CNC have also resisted. They do not want the farm sold. They believe that the renunciation by Craig White was valid and that the estate only owns the undivided one-half interest in the farm property owned by Craig White. They also do not believe the corporate veil should be pierced as to the Cravon Auto site, thereby shielding that property from the judgment liens.

*Discussion*

It is important to remember that even though the motions implicate a variety of complicated legal issues, the main issue in front of the court is a motion to approve a compromise between the Chapter 7 trustee and a judgment lien creditor. In determining whether a settlement is fair and reasonable for the bankruptcy estate, the bankruptcy court considers the following factors:

> (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, as well as the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Nangle v. Surratt-States (In re Nangle)*, 288 B.R. 213, 217 (B.A.P. 8th Cir. 2003) (citing *Lambert v. Flight Transp. Corp., FTC (In re Flight Transp. Corp. Sec. Litig.)*, 730 F.2d at 1135).

Upon considering those factors, it seems readily apparent that the compromise cannot be approved. The probability of success cannot be fairly evaluated at this point of the proceeding. The compromise calls for counsel for People's to represent the trustee to sell the property (against the wishes of the co-owners), and to be paid for doing so from the sale proceeds. People's would be paid the vast majority of the sale proceeds without any consideration of the priority between CAT and

People's. Further, at least at the present time, CNC owns an undivided one-half interest in the farm. The compromise assumes that the trustee would be able to sell CNC's interest even if the trustee is unable to defeat the renunciation, but such a sale would require a showing of the various factors required under 11 U.S.C. § 363(h). There has been no such showing. Further, it appears the bankruptcy estate has a valuable asset at the present time – ownership of C&V, which owns real estate with substantial equity. People's and CAT apparently desire to pierce the corporate veil on that property, which is contrary to the interests of the trustee on behalf of the bankruptcy estate.

The proposed compromise is certainly in the best interest of People's. It would be armed with the powers of the trustee to sell property and to pursue, at the expense of the bankruptcy estate, the recovery of property primarily for itself and without addressing its priority dispute with CAT. The compromise is not in the interest of CAT since it gets nothing from the compromise except, perhaps, a pro rata share of whatever amount is left to the estate. Finally, the compromise would not be in the best interest of Debtors or CNC since People's, on behalf of the trustee, would be seeking to unwind their transactions.

The bottom line is that while I certainly understand and appreciate the difficulties this case presents to the trustee, it is simply not yet the time to approve such a compromise. On this same date, the court is issuing its Order in Adversary Proceeding 13-4010 which could assist the trustee in evaluating his options at this point. The final outcome of that adversary proceeding will certainly assist the trustee in determining whether he has a right to pursue recovery of other assets (one-fourth interest in Gerald White's estate renounced by Craig White). Further, priority of the judgment liens will eventually need to be decided, but the forum may be in state court should the trustee elect to abandon the farm property. Regardless of that decision, the trustee may also need to decide whether to contest any attempt by People's or CAT to pierce the corporate veil of C&V. Of course, it is acceptable (and even prudent) to settle disputes before litigation is commenced, but the pending compromise fails to include all parties who would be affected by it. Finally, the proposed compromise would clearly favor People's over other creditors, such as CAT. I would likely feel differently about a proposed compromise if the two judgment lienholders were both part of the compromise, or if the priority between those two lienholders were clearly established. Perhaps that will come another day.

IT IS, THEREFORE, ORDERED that the motion to approve compromise (Fil. #54) is denied, without prejudice; and

IT IS FURTHER ORDERED that since the motion to approve compromise is denied, the motion for appointment (Fil. #57) is also denied.

DATE: February 12, 2014.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Galen E. Stehlik
    John A. Wolf
    Richard P. Garden, Jr.
    *Thomas O. Ashby
    Gregory M. Neuhaus
    Michael J. Whaley
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.